IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-00518-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | STIPULATED ORDER FOR PERMANENT |
| | ) | INJUNCTION AND CIVIL PENALTY |
| EPIC GAMES, INC., | ) | JUDGMENT |
| | ) | |
| Defendant. | ) | |

Plaintiff, the United States of America, acting upon notification and authorization

to the Attorney General by the Federal Trade Commission ("Commission" or "FTC"),

filed its Complaint for Civil Penalties, Permanent Injunction, and Other Relief

("Complaint"), for a permanent injunction, civil penalties, and other relief in this matter,

pursuant to Sections 13(b), 16(a)(1), and 19 of the Federal Trade Commission Act ("FTC

Act"), 15 U.S.C. §§ 53(b), 56(a)(1), and 57(b), the Children's Online Privacy Protection

Act, 15 U.S.C. §§ 6502(c) and 6505(d), and the Commission's Children's Online Privacy

Protection Rule ("COPPA Rule"), 16 C.F.R. Part 312. Defendant has waived service of

the summons and the Complaint. Plaintiff and Defendant stipulate to the entry of this

Stipulated Order for Permanent Injunction and Civil Penalty Judgment ("Order") to

resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendant violated the COPPA Rule and the FTC Act by developing and operating an Internet-enabled video game with unfair default information sharing settings for Children and Teens; by failing to provide notice on Defendant's website or online service, and direct notice to Parents, of the Personal Information Defendant Collects online from Children, how Defendant uses such information, and Defendant's Disclosure practices; by failing to Obtain Verifiable Parental Consent before any Collection or use of Personal Information from Children; by failing to provide, at the request of Parents, a description of the specific types or categories of Personal Information Collected from Children; and by failing to Delete, at the request of Parents, Personal Information Collected from Children.

3.     Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.     Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.     Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     **"Affirmative Express Consent"** means any freely given, specific, informed, and unambiguous indication of an individual's wishes

2

demonstrating agreement by the individual, such as by a clear affirmative action, following a Clear and Conspicuous disclosure to the individual of: (i) all information required by sub-Provision III.C; (ii) a simple, easily-located means for the individual to withdraw consent; (iii) any limitations on the individual's ability to withdraw such consent; and (iv) all other information material to the provision of consent. The Clear and Conspicuous disclosure must be separate from any "privacy policy," "terms of service," "terms of use," or other similar document. The following do not constitute Affirmative Express Consent:

1. Inferring consent from the hovering over, muting, pausing, or closing of a given piece of content by the consumer; or

2. Obtaining consent through a user interface that has the effect of subverting or impairing user autonomy, decision-making, or choice.

B. **"Biometric Information"** means data that depicts or describes the physical or biological traits of an identified or identifiable individual, including: (1) identifiable depictions or identifiable information derived therefrom (e.g., extracts, models, or transcripts derived from image or video files); (2) copies of, or identifiable information derived from, an individual's facial features (e.g., faceprints, face embeddings, iris scans, retina scans, etc.), fingerprints, handprints, voice, genetics, or other physical or biological features; or (3) copies of, or identifiable information derived from, an

3

individual's characteristic movements or gestures (e.g., gait or typing patterns).

C.  "**Child**" or "**Children**" means an individual or individuals under the age of 13.

D.  "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.  In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.  A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.  An audible disclosure, including streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as Children, Teens, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

E. "**Collects**," "**Collected**," "**Collecting**," or "**Collection**" means, for the purposes of Definitions L, N, P, T, X, Z, AA, and Provision I of this Order only, the gathering of any Personal Information from a Child by any means, including but not limited to:

1. Requesting, prompting, or encouraging a Child to submit Personal Information online;

2. Enabling a Child to make Personal Information publicly available in identifiable form; or

3. Passive tracking of a Child online.

5

F.   "**Compliance Date**" means thirty (30) days after entry of this Order.

G.   "**Covered Business**" means: (1) Defendant; and (2) any business that Defendant controls, directly or indirectly, that (i) discloses Covered Information collected from one user to another user, (ii) enables the disclosure of Covered Information from one user to another user, or (iii) enables any user to communicate with any other user. For purposes of this Order, to the extent that, after entry of this Order, Defendant obtains direct or indirect control over a business that discloses Covered Information collected from one user to another user, enables the disclosure of Covered Information from one user to another user, or enables any user to communicate with any other user, such business becomes a Covered Business sixty (60) days after the date on which Defendant obtained such control.

H.   "**Covered Information**" means the following information from or about an individual consumer: (1) Personal Information; (2) Biometric Information; (3) the content of any communication from an individual; (4) credit or debit card information; (5) a date of birth; (6) a first and last name; (7) a home or other physical address including street name and name of a city or town; (8) Online Contact Information; (9) a screen or user name where it functions in the same manner as Online Contact Information; (10) a telephone number; (11) a Social Security number; (12) a Persistent Identifier; (13) geolocation information sufficient to identify street name and name of a city or town; or

6

(14) information concerning an individual collected online and combined with a Persistent Identifier.

I.    "**Covered Product or Service**" means any Internet-enabled product or service controlled or operated, directly or indirectly, by any Covered Business, that: (1) discloses Covered Information collected from one user to another user; (2) enables the disclosure of Covered Information from one user to another user; or (3) enables any user to communicate with any other user.

J.    "**Defendant**" means Epic Games, Inc., a corporation, and its successors and assigns.

K.    "**Delete**" means to remove Personal Information such that it is not maintained in retrievable form and cannot be retrieved in the normal course of business.

L.    "**Disclose**," "**Disclosed**," "**Disclosing**," or "**Disclosure**" means, with respect to Personal Information, for the purposes of Definitions N, X, Z, AA, and Provision I of this Order only:

1.    The Release of Personal Information Collected by an Operator from a Child in identifiable form for any purpose, except where an Operator provides such information to a Person who provides Support for the Internal Operations of the Website or Online Service; and

2.    Making Personal Information Collected by an Operator from a Child publicly available in identifiable form by any means, including but not

7

limited to a public posting through the Internet, or through a personal home page or screen posted on a website or online service; a pen pal service; an electronic mail service; a message board; or a chat room.

M.  "**Internet**" means collectively the myriad of computer and telecommunication facilities, including equipment and operating software, which comprises the interconnected world-wide network of networks that employ the Transmission Control Protocol/Internet Protocol, or any predecessor or successor protocols to such protocol, to communicate information of all kinds by wire, radio, or other methods of transmission.

N.  "**Obtain, Obtained, or Obtaining Verifiable Parental Consent**" means making any reasonable effort (taking into consideration available technology) to ensure that before Personal Information is Collected from a Child, a Parent of the Child:

1.  Receives notice of the Operator's Personal Information Collection, use, and Disclosure practices; and

2.  Authorizes any Collection, use, or Disclosure of the Personal Information.

O.  "**Online Contact Information**" means an email address or any other substantially similar identifier that permits direct contact with a Person online, including but not limited to, an instant messaging user identifier, a voice over internet protocol (VOIP) identifier, or a video chat identifier.

8

P.     **"Operator"** means any Person who operates a website located on the
       Internet or an online service and who Collects or maintains Personal
       Information from or about the users of or visitors to such website or online
       service, or on whose behalf such information is Collected and maintained,
       or offers products or services for sale through the website or online service,
       where such website or online service is operated for commercial purposes
       involving commerce among the several States, or with one or more foreign
       nations; in any territory of the United States or in the District of Columbia,
       or between any such territory and another such territory or any State or
       nation; or between the District of Columbia and any State, territory, or
       foreign nation.

Q.     **"Parent"** includes a legal guardian.

R.     **"Persistent Identifier"** means an identifier that can be used to recognize a
       user over time and across different websites or online services. Such
       Persistent Identifier includes, but is not limited to, a customer number held
       in a cookie, an Internet Protocol (IP) address, a processor or device serial
       number, or unique device identifier.

S.     **"Person"** means any individual, partnership, corporation, trust, estate,
       cooperative, association, or other entity.

T.     **"Personal Information"** means individually identifiable information about
       an individual Collected online, including:

       1. A first and last name;

9

2. A home or other physical address including street name and name of a city or town;

3. Online Contact Information;

4. A screen or user name where it functions in the same manner as Online Contact Information;

5. A telephone number;

6. A Social Security number;

7. A Persistent Identifier;

8. A photograph, video, or audio file where such file contains a Child's image or voice;

9. Geolocation information sufficient to identify street name and name of a city or town; or

10. Information concerning the Child or the Parents of that Child that the Operator Collects online from the Child and combines with a Persistent Identifier.

U. "**Principal Executive Officer**" means Timothy Sweeney for so long as he serves as Chief Executive Officer of Defendant, or such other officer (regardless of title) that is designated in Defendant's bylaws or by resolution of Defendant's board of directors as being the most senior executive officer of Defendant, acting solely in his official capacity on behalf of Defendant; or if Timothy Sweeney no longer serves in such a position, then such other individual serving as the Chief Executive Officer

10

of Defendant, or such other officer (regardless of title) that is designated in Defendant's bylaws or by resolution of Defendant's board of directors as being the most senior executive officer of Defendant, acting solely in their official capacity on behalf of Defendant. In the event that Timothy Sweeney is not the Principal Executive Officer and such position is jointly held by two or more individuals, then each of such individuals must be deemed to be a Principal Executive Officer.

V.     "**Privacy Setting**" means any control or setting that allows a user of a Covered Product or Service, or their Parent, to enable, and subsequently disable, restrict, or otherwise control, any disclosure of the user's Covered Information to, or ability of the user to communicate with or receive communications from, any other user of the Covered Product or Service.

W.     "**Release of Personal Information**" means the sharing, selling, renting, or transfer of Personal Information to any Third Party.

X.     "**Support for the Internal Operations of the Website or Online Service**" means:

1.  Those activities necessary to:

    a.  Maintain or analyze the functioning of the website or online service;

    b.  Perform network communications;

    c.  Authenticate users of, or personalize the content on, the website or online service;

11

    d. Serve contextual advertising on the website or online service or cap the frequency of advertising;

    e. Protect the security or integrity of the user, website, or online service;

    f. Ensure legal or regulatory compliance; or

    g. Fulfill a request of a Child as permitted by 16 C.F.R. §§ 312.5(c)(3) and (4);

2. So long as the information Collected for the activities listed in paragraphs (1)(a)-(g) of this definition is not used or Disclosed to contact a specific individual, including through behavioral advertising, to amass a profile on a specific individual, or for any other purpose.

Y.   "**Teen**" means an individual aged 13, 14, 15, 16, or 17.

Z.   "**Third Party**" means, for the purpose of Definition W only, any Person who is not:

1. An Operator with respect to the Collection or maintenance of Personal Information on the Web site or online service; or

2. A Person who provides Support for the Internal Operations of the Web site or Online Service and who does not use or Disclose information protected under the COPPA Rule (attached as Appendix A) for any other purpose.

12

AA. **"Website or Online Service Directed to Children"** means a commercial website or online service, or portion thereof, that is targeted to Children.

1. In determining whether a website or online service, or a portion thereof, is directed to Children, the Commission will consider its subject matter, visual content, use of animated characters or Child-oriented activities and incentives, music or other audio content, age of models, presence of Child celebrities who appeal to Children, language or other characteristics of the website or online service, as well as whether advertising promoting or appearing on the website or online service is directed to Children. The Commission will also consider competent and reliable empirical evidence regarding audience composition, and evidence regarding the intended audience.

2. A website or online service shall be deemed directed to Children when it has actual knowledge that it is Collecting Personal Information directly from users of another website or online service directed to Children.

3. A website or online service that is directed to Children under the criteria set forth in paragraph (1) of this definition, but that does not target Children as its primary audience, shall not be deemed directed to Children if it:

   a. Does not Collect Personal Information from any visitor prior to Collecting age information; and

13

b.  Prevents the Collection, use, or Disclosure of Personal Information

from visitors who identify themselves as under age 13 without first

complying with the notice and parental consent provisions of the

COPPA Rule (attached as Appendix A).

4.  A website or online service shall not be deemed directed to Children solely

because it refers or links to a commercial website or online service directed

to Children by using information location tools, including a directory,

index, reference, pointer, or hypertext link.

## ORDER

## I.   INJUNCTION CONCERNING THE COLLECTION OF
## PERSONAL INFORMATION FROM CHILDREN

IT IS FURTHER ORDERED that, no later than the Compliance Date, Defendant

and Defendant's officers, agents, employees, and attorneys, and all other Persons in

active concert or participation with any of them, who receive actual notice of this Order,

whether acting directly or indirectly, in connection with being an Operator of any

Website or Online Service Directed to Children or of any website or online service with

actual knowledge that it is Collecting or maintaining Personal Information from a Child,

are hereby permanently restrained and enjoined from:

A.  Failing to make reasonable efforts, taking into account available

technology, to ensure that a Parent of a Child receives direct notice of the

Operator's practices with regard to the Collection, use, or Disclosure of

Personal Information from Children, including notice of any material

14

change in the Collection, use, or Disclosure practices to which the Parent has previously consented, unless the COPPA Rule (attached as Appendix A), provides an exception to providing such notice;

B.  Failing to post a prominent and clearly labeled link to an online notice of the Operator's information practices with regard to Children, if any, on the home or landing page or screen of its website or online service, and at each area of the website or online service where Personal Information is Collected from Children, unless the COPPA Rule (attached as Appendix A), provides an exception to providing such notice;

C.  Failing to Obtain Verifiable Parental Consent before any Collection, use, or Disclosure of Personal Information from Children, including consent to any material change in the Collection, use, or Disclosure practices to which the Parent has previously consented, unless the COPPA Rule (attached as Appendix A), provides an exception to Obtaining Verifiable Parental Consent;

D.  Failing to Delete a Child's Personal Information at the request of a Parent;

E.  Retaining a Child's Personal Information for longer than is reasonably necessary to fulfill the purpose for which the information was Collected; and

F.  Violating the COPPA Rule (attached as Appendix A).

15

## II. INJUNCTION CONCERNING CHILDREN'S PERSONAL INFORMATION PREVIOUSLY COLLECTED

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, must:

A. Within sixty (60) days of the Compliance Date, Delete all Personal Information that is associated, at the time of the Compliance Date, with any Fortnite user, unless:

1. the user has provided age information through a neutral age gate identifying the user as age 13 or older; or

2. Defendant has provided direct notice and Obtained Verifiable Parental Consent; and

B. Within ninety (90) days of the Compliance Date, provide a written statement to the Commission, sworn under penalty of perjury, that:

1. Describes all processes through which Defendant provided direct notice and sought to Obtain Verifiable Parental consent for any accounts covered by this Provision II;

2. Identifies the total number of accounts for which (i) direct notice was provided; (ii) Defendant Obtained Verifiable Parental Consent; (iii) verifiable parental consent was affirmatively declined; and (iv) no response was provided;

16

3. Describes in detail any Personal Information Defendant retains in accordance with sub-Provisions II.C or II.D, the basis for such retention, and, as applicable, the specific government agency, law, regulation, or court order that requires such retention; and

4. Confirms that all Personal Information required to be Deleted by this Provision II has been Deleted.

*Provided, however,* that:

C. Persistent Identifiers that Defendant is otherwise required to Delete by this Provision II need not be Deleted to the extent they are used solely for Support for the Internal Operations of the Website or Online Service; and

D. Personal Information that Defendant is otherwise required to Delete by this Provision II may be retained, and may be disclosed, as requested by a government agency or required by law, regulation, or court order. Within thirty (30) days after the obligation to retain any such Personal Information has ended, Defendant shall Delete such Personal Information and provide an additional written statement to the Commission, sworn under penalty of perjury, confirming that Defendant has Deleted such Personal Information.

## III. DEFAULT PRIVACY SETTINGS FOR CHILDREN AND TEENS

IT IS FURTHER ORDERED that, within thirty (30) days of the Compliance Date, Defendant, Defendant's officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this

17

Order, in connection with any Covered Product or Service, are permanently restrained and enjoined from disclosing a Child's or Teen's Covered Information to, enabling a Child or Teen to disclose their Covered Information to, or enabling a Child or Teen to converse with or be party to conversations between or among, any other user of the Covered Product or Service, unless:

A.    For a Child user, the Child's Parent has provided, and not withdrawn, their Affirmative Express Consent through an easily-located Privacy Setting; and

B.    For a Teen user, the Teen (or the Teen's Parent) has provided, and not withdrawn, their Affirmative Express Consent through an easily-located Privacy Setting.

C.    Each Clear and Conspicuous disclosure required pursuant to sub-Provisions III.A. and III.B. must identify: (1) each type of Covered Information that will be disclosed; (2) each category of Persons to which each type of Covered Information will be disclosed; (3) each type of communication the Child or Teen will be able to make or receive; and (4) each category of Persons to, or from which, the Child or Teen will be able to make, or receive, each type of communication.

D.    For the purposes of this Provision III:

1. Any user of any Covered Product or Service that is a Website or Online Service Directed to Children must be deemed a Child, provided, however, that for any such Covered Product or Service that does not target Children as its primary audience, Defendant may collect age

18

information from users before collecting any other Covered Information and treat each user accordingly unless and until Defendant has actual knowledge that the user is a Child or Teen;

2. Any user of any Covered Product or Service that is not a Website or Online Service Directed to Children may be treated as neither a Child nor a Teen unless and until Defendant has actual knowledge that the user is a Child or Teen; and

3. To the extent that a display name of a Child or Teen is disclosed in a multiuser game or other interactive multiuser experience to identify participating users, such display name will not be considered Covered Information. Provided, however, Defendant must describe: (i) in a direct notice to parents, any such disclosure of a Child's display name; and (ii) in Defendant's privacy policy, any such disclosure of a Child's or Teen's display name.

## IV.    MANDATED PRIVACY PROGRAM

IT IS FURTHER ORDERED that each Covered Business, in connection with the collection, maintenance, use, or disclosure of, or provision of access to, Covered Information, must, within thirty (30) days of the Compliance Date, establish and implement, and thereafter maintain, a comprehensive privacy program (the "Privacy Program") that protects the privacy of such Covered Information. To satisfy this requirement, each Covered Business must, at a minimum:

19

A. Document in writing the content, implementation, and maintenance of the Privacy Program;

B. Provide the written program and any evaluations thereof or updates thereto to its board of directors or governing body, or if no such board or equivalent governing body exists, to a senior officer responsible for the Privacy Program at least once every twelve (12) months;

C. Designate a qualified employee or employees to coordinate and be responsible for the Privacy Program;

D. Assess and document, at least once every twelve (12) months, internal and external risks to the privacy of Covered Information that could result in the unauthorized collection, maintenance, use, or disclosure of, or provision of access to, Covered Information;

E. Design, implement, maintain, and document safeguards that control for the material internal and external risks the Covered Business identifies to the privacy of Covered Information identified in response to sub-Provision IV.D. Each safeguard must be based on the volume and sensitivity of the Covered Information that is at risk, and the likelihood that the risk could be realized and result in the unauthorized collection, maintenance, use, or disclosure of, or provision of access to, Covered Information. Such safeguards must include:

   1. Policies, procedures, and technical measures to comply with COPPA and the COPPA Rule;

20

2. Policies, procedures, and technical measures to comply with Provision III;

3. Regular COPPA Rule training on at least an annual basis for all employees and contractors providing services to the Covered Business whose responsibilities include any of the following: (a) access to Covered Information; (b) Covered Products or Services design, engineering, or implementation; or (c) Privacy Settings design, engineering, or implementation; and

4. Regular privacy training programs for all employees and contractors providing services to the Covered Business, updated on at least an annual basis to address any identified material internal or external risks and safeguards implemented pursuant to this Order;

F. Assess, at least once every twelve (12) months, the sufficiency of any safeguards in place to address the internal and external risks to the privacy of Covered Information, and modify the Privacy Program as needed based on the results;

G. Test and monitor the effectiveness of the safeguards at least once every twelve (12) months, and modify the Privacy Program as needed based on the results;

H. Select and retain service providers capable of safeguarding Covered Information they access through or receive from the Covered Business, and contractually require service providers to implement and maintain

21

safeguards sufficient to address the internal and external risks to the privacy of Covered Information; and

I. Evaluate and adjust the Privacy Program in light of any changes to the Covered Business's operations or business arrangements, new or more efficient technological or operational methods to control for the risks identified in sub-Provision IV.D of this Order, or any other circumstances that the Covered Business knows or has reason to know may have an impact on the effectiveness of the Privacy Program or any of its individual safeguards. At a minimum, the Covered Business must evaluate the Privacy Program at least once every twelve (12) months and modify the Privacy Program as needed based on the results.

## V. PRIVACY ASSESSMENTS BY A THIRD PARTY

IT IS FURTHER ORDERED that, in connection with Provision IV of this Order titled Mandated Privacy Program, Defendant must obtain initial and biennial assessments ("Assessments"):

A. The Assessment must be obtained from a qualified, objective, independent third-party professional ("Assessor"), who: (1) uses procedures and standards generally accepted in the profession; (2) conducts an independent review of the Privacy Program; (3) retains all documents relevant to each Assessment for five (5) years after completion of such Assessment; and (4) will provide such documents to the Commission within ten (10) days of receipt of a written request from a representative of the Commission. The

22

Assessor may not withhold any documents from the Commission on the basis of a claim of confidentiality, proprietary or trade secrets, work product protection, attorney-client privilege, statutory exemption, or any similar claim.

B.   For each Assessment, Defendant must provide the Associate Director for Enforcement for the Bureau of Consumer Protection at the Federal Trade Commission with the name, affiliation, and qualifications of the proposed Assessor, whom the Associate Director shall have the authority to approve in their sole discretion.

C.   Within ten (10) days of receiving notice that the Associate Director for Enforcement has approved a proposed Assessor, Defendant must file a joint notice of the selection of the Assessor with the Court.

D.   The reporting period for the Assessments must cover: (1) the first 180 days after the Privacy Program has been put in place for the initial Assessment; and (2) each two-year period thereafter for twenty (20) years after the entry date of the Order for the biennial Assessments.

E.   Each Assessment must, for the entire assessment period:

1.   Determine whether each Covered Business has implemented and maintained the Privacy Program required by Provision IV of this Order, titled Mandated Privacy Program;

2.   Assess the effectiveness of each Covered Business's implementation and maintenance of sub-Provisions IV.A-I;

23

3. Identify any gaps or weaknesses in, or instances of material noncompliance with, the Privacy Program;

4. Address the status of gaps or weaknesses in, or instances of material non-compliance with, the Privacy Program that were identified in any prior Assessment required by this Order; and

5. Identify specific evidence (including but not limited to documents reviewed, sampling and testing performed, and interviews conducted) examined to make such determinations, assessments, and identifications, and explain why the evidence that the Assessor examined is: (a) appropriate for assessing an enterprise of the Covered Business's size, complexity, and risk profile; and (b) sufficient to justify the Assessor's findings. No finding of any Assessment shall rely primarily on assertions or attestations by a Covered Business's management. The Assessment must be signed by the Assessor, state that the Assessor conducted an independent review of the Privacy Program and did not rely primarily on assertions or attestations by a Covered Business's management, and state the number of hours that each member of the assessment team worked on the Assessment. To the extent that a Covered Business adds, materially revises, or materially updates one or more safeguards required under Provision IV of this Order during an Assessment period, the Assessment must assess the effectiveness of the added, materially revised, or materially updated

24

safeguard(s) for the time period in which it was in effect, and provide a
separate statement detailing the basis for each additional, materially
revised, or materially updated safeguard.

F.   Each Assessment must be completed within sixty (60) days after the end of
the reporting period to which the Assessment applies. Unless otherwise
directed by a Commission representative in writing, Defendant must submit
an unredacted copy of the initial Assessment and a proposed redacted copy
suitable for public disclosure of the initial Assessment to the Commission
within ten (10) days after the Assessment has been completed via email to
DEbrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to
Associate Director for Enforcement, Bureau of Consumer Protection,
Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington,
DC 20580. The subject line must begin: "United States v. Epic Games,
Inc., FTC File No. 2223087." Defendant must retain an unredacted copy of
each subsequent biennial Assessment as well as a proposed redacted copy
suitable for public disclosure of each subsequent biennial Assessment until
the Order is terminated and provide it to the Associate Director for
Enforcement within ten (10) days of request. The initial Assessment and
any subsequent biennial Assessment provided to the Commission must be
marked, in the upper right-hand corner of each page, with the words "DPIP
Assessment" in red lettering.

G.     Within ten (10) days after the completion of each Assessment, Defendant
       must file an unredacted copy of the Assessment with the Court. The Parties
       acknowledge that the Assessments may contain confidential business
       information, personal or financial information, trade secrets, or otherwise
       competitively sensitive information. Any Assessment containing such
       information shall be filed under seal and accompanied by a submission
       demonstrating good cause for sealing the Assessment.

## VI.     COOPERATION WITH THIRD-PARTY PRIVACY ASSESSOR

IT IS FURTHER ORDERED that Defendant, whether acting directly or indirectly, in connection with any Assessment required by Provision V of this Order titled Privacy Assessments by a Third Party, must:

A.     Provide or otherwise make available to the Assessor all information and
       material in its possession, custody, or control that is relevant to the
       Assessment for which there is no reasonable claim of privilege;

B.     Provide or otherwise make available to the Assessor information about each
       Covered Business's network(s), and all of each Covered Business's IT
       assets so that the Assessor can determine the scope of the Assessment, and
       visibility to those portions of the network(s) and IT assets deemed in scope;
       and

C.     Disclose all material facts to the Assessor, and not misrepresent in any
       manner, expressly or by implication, any fact material to the Assessor's:

26

(1) determination of whether Defendant has implemented and maintained the Privacy Program required by Provision IV of this Order, titled Mandated Privacy Program; (2) assessment of the effectiveness of the implementation and maintenance of sub-Provisions IV.A-I; or (3) identification of any gaps or weaknesses in, or instances of material noncompliance with, the Privacy Program.

## VII.   ANNUAL CERTIFICATION

IT IS FURTHER ORDERED that, one year after the Compliance Date, and each year thereafter for ten (10) years after the Compliance Date:

- A.   Defendant must provide the Commission with a certification from the Principal Executive Officer that: (1) Defendant has established, implemented, and maintained the requirements of this Order; and (2) Defendant is not aware of any material noncompliance that has not been (a) corrected or (b) disclosed to the Commission. The certification must be based on the personal knowledge of the Principal Executive Officer or subject matter experts upon whom the Principal Executive Officer reasonably relies in making the certification.

- B.   Defendant must provide the Commission with a certification from a senior officer of each Covered Business other than Defendant responsible for each such Covered Business's Privacy Program that: (1) each Covered Business other than Defendant has established, implemented, and maintained the requirements of this Order; and (2) each Covered Business other than

27

Defendant is not aware of any material noncompliance that has not been (a) corrected or (b) disclosed to the Commission. The certification must be based on the personal knowledge of the senior corporate manager, senior officer, or subject matter experts upon whom the senior corporate manager or senior officer reasonably relies in making the certification.

C. Unless otherwise directed by a Commission representative in writing, submit all annual certifications to the Commission pursuant to this Order via email to DEbrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to the Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: "United States v. Epic Games, Inc., FTC File No. 2223087."

## VIII. MONETARY JUDGMENT FOR CIVIL PENALTY

IT IS FURTHER ORDERED that:

A. Judgment in the amount of two hundred seventy five million dollars ($275,000,000) is entered in favor of Plaintiff against Defendant as a civil penalty.

B. Defendant is ordered to pay to Plaintiff, by making payment to the Treasurer of the United States, two hundred seventy five million dollars ($275,000,000), which, as Defendant stipulates, its undersigned counsel holds in escrow for no purpose other than payment to Plaintiff. Such payment must be made within seven (7) days of entry of this Order by

28

electronic fund transfer in accordance with instructions previously provided

by a representative of Plaintiff.

C.      Defendant relinquishes dominion and all legal and equitable right, title, and

interest in all assets transferred pursuant to this Order and may not seek the

return of any assets.

D.      The facts alleged in the Complaint will be taken as true, without further

proof, in any subsequent civil litigation by or on behalf of the Commission

in a proceeding to enforce its rights to any payment or monetary judgment

pursuant to this Order.

E.      Defendant acknowledges that its Taxpayer Identification Numbers (Social

Security Numbers or Employer Identification Numbers), which Defendant

must submit to the Commission, may be used for collecting and reporting

on any delinquent amount arising out of this Order, in accordance with 31

U.S.C. §7701.

## IX.    ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt
of this Order:

A.      Defendant, within seven (7) days of entry of this Order, must submit to the

Commission an acknowledgment of receipt of this Order sworn under

penalty of perjury.

B.      For five (5) years after entry of this Order, Defendant must deliver a copy

of this Order to: (1) all principals, officers, directors, and LLC managers

29

and members; (2) all employees, agents, and representatives having managerial responsibilities for conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Provision titled Compliance Reporting. Delivery must occur within seven (7) days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.  From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## X.  COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.  One (1) year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1.  Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Plaintiff may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales; (d) describe in detail whether and how Defendant

30

is in compliance with each provision of this Order; and (e) provide a
copy of each Order Acknowledgment obtained pursuant to this Order,
unless previously submitted to the Commission.

B.   For ten (10) years after entry of this Order, Defendant must submit a
compliance notice, sworn under penalty of perjury, within 14 days of any
change in the following:

1. Defendant must report any change in: (a) any designated point of
contact; or (b) the structure of Defendant or any entity that Defendant
has any ownership interest in or controls directly or indirectly that may
affect compliance obligations arising under this Order, including:
creation, merger, sale, or dissolution of the entity or any subsidiary,
parent, or affiliate that engages in any acts or practices subject to this
Order.

C.   Defendant must submit to the Commission notice of the filing of any
bankruptcy petition, insolvency proceeding, or similar proceeding by or
against Defendant within fourteen (14) days of its filing.

D.   Any submission to the Commission required by this Order to be sworn
under penalty of perjury must be true and accurate and comply with 28
U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury
under the laws of the United States of America that the foregoing is true
and correct. Executed on: _____" and supplying the date, signatory's full
name, title (if applicable), and signature.

31

Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: "United States v. Epic Games, Inc., FTC File No. 2223087."

## XI. RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for ten (10) years after entry of the Order, and retain each such record for five (5) years. Specifically, Defendant must create and retain the following records:

A.  Accounting records showing the revenues from all goods or services sold in connection to any Covered Product or Service;

B.  Personnel records showing, for each Person providing services in connection to any Covered Product or Service, whether as an employee or otherwise, that Person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.  Copies or records of all consumer complaints and refund requests concerning the subject matter of the Order, whether received directly or through any domestic government regulatory authority; and

D.  All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission.

## XII.    COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order:

A.    Within fourteen (14) days of receipt of a written request from a representative of the Commission or Plaintiff, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69, provided that Defendant, after attempting to resolve a dispute without court action and for good cause shown, may file a motion with this Court seeking an order for one or more of the protections set forth in Rule 26(c).

B.    For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with Defendant. Defendant must permit representatives of the Commission and Plaintiff to interview any employee or other Person affiliated with Defendant who has agreed to such an interview. The Person interviewed may have counsel present.

C.    The Commission and Plaintiff may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated

33

with Defendant, without the necessity of identification or prior notice.

Nothing in this Order limits the Commission's lawful use of compulsory

process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49,

57b-1.

## XIII.    RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

SO ORDERED this _7_ day of _February_, 2023 .

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

THE UNITED STATES OF AMERICA

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General, Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Acting Director, Consumer Protection Branch

LISA K. HSIAO
Assistant Director, Consumer Protection Branch

Date: 2/2/2023

Michael J. Wadden
Joshua A. Fowkes
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 5th Street, NW
Washington, DC 20530
(202) 305-7133
michael.j.wadden@usdoj.gov

35

OF COUNSEL

**FOR THE FEDERAL TRADE COMMISSION**

BENJAMIN WISEMAN
Acting Associate Director
Division of Privacy and Identity Protection

MARK EICHORN
Assistant Director
Division of Privacy and Identity Protection

ANDREW HASTY
JAMES TRILLING
AMANDA KOULOUSIAS
Attorneys
Division of Privacy and Identity Protection
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
ahasty@ftc.gov
jtrilling@ftc.gov
akoulousias@ftc.gov

**FOR DEFENDANT:**

_____     Date: 1/31/23

Christopher Olsen
Wilson Sonsini Goodrich & Rosati
1700 K Street, NW
Washington, DC 20006
(202) 973-8803
colsen@wsgr.com

Libby Weingarten
Wilson Sonsini Goodrich & Rosati
1700 K Street, NW
Washington, DC 20006
(202) 973-8861
lweingarten@wsgr.com

*Counsel for Epic Games, Inc.,*

**DEFENDANT:**

Jim Sweeney 2/1/23     Date: 1/31/23

Name: Tim Sweeney
Title: Chief Executive Officer
Epic Games, Inc.

37

# Appendix A

average firm-wide billing rate (partners and associates) in 2011 was $403, the average partner rate was $482, and the average associate rate was $303.

The Commission believes it reasonable to assume that the workload among law firm partners and associates for COPPA compliance questions could be competently addressed and efficiently distributed among attorneys at varying levels of seniority, but would be weighted most heavily to more junior attorneys. Thus, assuming an apportionment of two-thirds of such work is done by associates, and one-third by partners, a weighted average tied to the average firm-wide associate and average firm-wide partner rates, respectively, in the *National Law Journal* 2011 survey would be about $365 per hour. The Commission believes that this rate B which is very near the mean of TIA's stated range of purported hourly rates that its members typically pay to engage counsel for COPPA compliance questions B is an appropriate measure to calculate the cost of legal assistance for operators to comply with the final Rule amendments.[396]

TIA also states that the 2012 SNPRM estimate of $42 per hour for technical support is too low, and that engaging expert technical personnel can, on average, involve hourly costs that range from $72 to $108.[397] Similar to TIA's hours estimate, discussed above, the Commission believes that TIA's estimate may have been based on implementing requirements that, ultimately, the Commission has determined not to adopt. For example, technical personnel will not need to "ensure" the security procedures of third parties; operators that have been eligible to use email plus for parental consents will not be required to implement new systems to replace it. It is unclear whether TIA's estimate for technical support is based on the types of disclosure-related tasks that the final Rule amendments would actually require, other tasks that the final Rule amendments would not require, or non-disclosure tasks not covered by the PRA. Moreover, unlike its estimate for lawyer assistance, TIA's

estimates for technical labor are not accompanied by an adequate explanation of why estimates for technical support drawn from BLS statistics are not an appropriate basis for the FTC's PRA analysis. Accordingly, the Commission believes it is reasonable to retain the 2012 SNPRM estimate of $42 per hour for technical assistance based on BLS data.

Thus, for the 180 new operators per year not previously accounted for under the FTC's currently cleared estimates, 10,800 cumulative disclosure hours would be composed of 9,000 hours of legal assistance and 1,800 hours of technical support. Applied to hourly rates of $365 and $42, respectively, associated labor costs for the 180 new operators potentially subject to the proposed amendments would be $3,360,600 (*i.e.*, $3,285,000 for legal support plus $75,600 for technical support).

Similarly, for the estimated 2,910 existing operators covered by the final Rule amendments, 58,200 cumulative disclosure hours would consist of 48,500 hours of legal assistance and 9,700 hours for technical support. Applied at hourly rates of $365 and $42, respectively, associated labor costs would total $18,109,900 (*i.e.*, $17,702,500 for legal support plus $407,400 for technical support). Cumulatively, estimated labor costs for new and existing operators subject to the final Rule amendments is $21,470,500.

(2) Reporting

The Commission staff assumes that the tasks to prepare augmented safe harbor program applications occasioned by the final Rule amendments will be performed primarily by lawyers, at a mean labor rate of $180 an hour.[398] Thus, applied to an assumed industry total of 120 hours per year for this task, incremental associated yearly labor costs would total $21,600.

The Commission staff assumes periodic reports will be prepared by compliance officers, at a labor rate of $28 per hour.[399] Applied to an assumed industry total of 600 hours per year for this task, associated yearly labor costs would be $16,800.

Cumulatively, labor costs for the above-noted reporting requirements total approximately $38,400 per year.

*G. Non-Labor/Capital Costs*

Because both operators and safe harbor programs will already be equipped with the computer equipment and software necessary to comply with the Rule's new notice requirements, the final Rule amendments should not impose any additional capital or other non-labor costs.[400]

**List of Subjects in 16 CFR Part 312**

Children, Communications, Consumer protection, Electronic mail, Email, Internet, Online service, Privacy, Record retention, Safety, science and technology, Trade practices, Web site, Youth.

■ Accordingly, for the reasons stated above, the Federal Trade Commission revises part 312 of Title 16 of the Code of Federal Regulations to read as follows:

**PART 312—CHILDREN'S ONLINE PRIVACY PROTECTION RULE**

Sec.
312.1 Scope of regulations in this part.
312.2 Definitions.
312.3 Regulation of unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet.
312.4 Notice.
312.5 Parental consent.
312.6 Right of parent to review personal information provided by a child.
312.7 Prohibition against conditioning a child's participation on collection of personal information.

---

[396] *Cf.* Civil Division of the United States Attorney's Office for the District of Columbia, United States Attorney's Office, District of Columbia, Laffey Matrix B 2003-2013, *available at http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf* (updated "Laffey Matrix" for calculating "reasonable" attorneys fees in suits in which fee shifting is authorized can be evidence of prevailing market rates for litigation counsel in the Washington, DC area; rates in table range from $245 per hour for most junior associates to $505 per hour for most senior partners).

[397] Toy Industry Association (comment 89, 2012 SNPRM), at 18.

[398] Based on Commission staff's experience with previously approved safe harbor programs, staff anticipates that most of the legal tasks associated with safe harbor programs will be performed by in-house counsel. *Cf.* Toy Industry Association (comment 89, 2012 SNPRM), at 19 (regional BLS statistics for lawyer wages can support estimates of the level of in-house legal support likely to be required on an ongoing basis). Moreover, no comments were received in response to the February 9, 2011 and May 31, 2011 **Federal Register** notices (76 FR at 7211 and 76 FR at 31334, respectively, *available at http://www.gpo.gov/fdsys/pkg/FR-2011-02-09/pdf/2011-2904.pdf* and *http://www.gpo.gov/fdsys/pkg/FR-2011-05-31/pdf/2011-13357.pdf*), which assumed a labor rate of $150 per hour for lawyers or similar professionals to prepare and submit a new safe harbor application. Nor was that challenged in the comments responding to the 2011 NPRM.

[399] *See* Bureau of Labor Statistics National Compensation Survey: Occupational Earnings in the United States, 2010, at Table 3, *available at http://www.bls.gov/ncs/ocs/sp/nctb1477.pdf*. This rate has not been contested.

[400] NCTA commented that the Commission failed to consider costs "related to redeveloping child-directed Web sites" that operators would be "forced" to incur as a result of the proposed Rule amendments, including for "new equipment and software required by the expanded regulatory regime." NCTA (comment 113, 2011 NPRM), at 23. Similarly, TIA commented that the proposed Rule amendments would entail "increased monetary costs with respect to technology acquisition and implementation * * *." Toy Industry Association (comment 163, 2011 NPRM), at 17. These comments, however, do not specify projected costs or which Rule amendments would entail the asserted costs.

312.8   Confidentiality, security, and integrity of personal information collected from children.
312.9   Enforcement.
312.10   Data retention and deletion requirements.
312.11   Safe harbor programs.
312.12   Voluntary Commission Approval Processes.
312.13   Severability.

**Authority:** 15 U.S.C. 6501–6508.

### § 312.1   Scope of regulations in this part.

This part implements the Children's Online Privacy Protection Act of 1998, (15 U.S.C. 6501, *et seq.,*) which prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet.

### § 312.2   Definitions.

*Child* means an individual under the age of 13.

*Collects* or *collection* means the gathering of any personal information from a child by any means, including but not limited to:

(1) Requesting, prompting, or encouraging a child to submit personal information online;

(2) Enabling a child to make personal information publicly available in identifiable form. An operator shall not be considered to have collected personal information under this paragraph if it takes reasonable measures to delete all or virtually all personal information from a child's postings before they are made public and also to delete such information from its records; or

(3) Passive tracking of a child online.

*Commission* means the Federal Trade Commission.

*Delete* means to remove personal information such that it is not maintained in retrievable form and cannot be retrieved in the normal course of business.

*Disclose or disclosure* means, with respect to personal information:

(1) The release of personal information collected by an operator from a child in identifiable form for any purpose, except where an operator provides such information to a person who provides support for the internal operations of the Web site or online service; and

(2) Making personal information collected by an operator from a child publicly available in identifiable form by any means, including but not limited to a public posting through the Internet, or through a personal home page or screen posted on a Web site or online service; a pen pal service; an electronic mail service; a message board; or a chat room.

*Federal agency* means an agency, as that term is defined in Section 551(1) of title 5, United States Code.

*Internet* means collectively the myriad of computer and telecommunications facilities, including equipment and operating software, which comprise the interconnected world-wide network of networks that employ the Transmission Control Protocol/Internet Protocol, or any predecessor or successor protocols to such protocol, to communicate information of all kinds by wire, radio, or other methods of transmission.

*Obtaining verifiable consent* means making any reasonable effort (taking into consideration available technology) to ensure that before personal information is collected from a child, a parent of the child:

(1) Receives notice of the operator's personal information collection, use, and disclosure practices; and

(2) Authorizes any collection, use, and/or disclosure of the personal information.

*Online contact information* means an email address or any other substantially similar identifier that permits direct contact with a person online, including but not limited to, an instant messaging user identifier, a voice over internet protocol (VOIP) identifier, or a video chat user identifier.

*Operator* means any person who operates a Web site located on the Internet or an online service and who collects or maintains personal information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation. This definition does not include any nonprofit entity that would otherwise be exempt from coverage under Section 5 of the Federal Trade Commission Act (15 U.S.C. 45). Personal information is *collected or maintained on behalf of* an operator when:

(1) It is collected or maintained by an agent or service provider of the operator; or

(2) The operator benefits by allowing another person to collect personal information directly from users of such Web site or online service.

*Parent* includes a legal guardian.

*Person* means any individual, partnership, corporation, trust, estate, cooperative, association, or other entity.

*Personal information* means individually identifiable information about an individual collected online, including:

(1) A first and last name;

(2) A home or other physical address including street name and name of a city or town;

(3) Online contact information as defined in this section;

(4) A screen or user name where it functions in the same manner as online contact information, as defined in this section;

(5) A telephone number;

(6) A Social Security number;

(7) A persistent identifier that can be used to recognize a user over time and across different Web sites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;

(8) A photograph, video, or audio file where such file contains a child's image or voice;

(9) Geolocation information sufficient to identify street name and name of a city or town; or

(10) Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition.

*Release of personal information* means the sharing, selling, renting, or transfer of personal information to any third party.

*Support for the internal operations of the Web site or online service means:*

(1) Those activities necessary to:

(i) Maintain or analyze the functioning of the Web site or online service;

(ii) Perform network communications;

(iii) Authenticate users of, or personalize the content on, the Web site or online service;

(iv) Serve contextual advertising on the Web site or online service or cap the frequency of advertising;

(v) Protect the security or integrity of the user, Web site, or online service;

(vi) Ensure legal or regulatory compliance; or

(vii) Fulfill a request of a child as permitted by § 312.5(c)(3) and (4);

(2) So long as The information collected for the activities listed in paragraphs (1)(i)–(vii) of this definition is not used or disclosed to contact a specific individual, including through behavioral advertising, to amass a

profile on a specific individual, or for any other purpose.

*Third party* means any person who is not:

(1) An operator with respect to the collection or maintenance of personal information on the Web site or online service; or

(2) A person who provides support for the internal operations of the Web site or online service and who does not use or disclose information protected under this part for any other purpose.

*Web site or online service directed to children* means a commercial Web site or online service, or portion thereof, that is targeted to children.

(1) In determining whether a Web site or online service, or a portion thereof, is directed to children, the Commission will consider its subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children. The Commission will also consider competent and reliable empirical evidence regarding audience composition, and evidence regarding the intended audience.

(2) A Web site or online service shall be deemed directed to children when it has actual knowledge that it is collecting personal information directly from users of another Web site or online service directed to children.

(3) A Web site or online service that is directed to children under the criteria set forth in paragraph (1) of this definition, but that does not target children as its primary audience, shall not be deemed directed to children if it:

(i) Does not collect personal information from any visitor prior to collecting age information; and

(ii) Prevents the collection, use, or disclosure of personal information from visitors who identify themselves as under age 13 without first complying with the notice and parental consent provisions of this part.

(4) A Web site or online service shall not be deemed directed to children solely because it refers or links to a commercial Web site or online service directed to children by using information location tools, including a directory, index, reference, pointer, or hypertext link.

**§ 312.3  Regulation of unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet.**

*General requirements.* It shall be unlawful for any operator of a Web site or online service directed to children, or any operator that has actual knowledge that it is collecting or maintaining personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed under this part. Generally, under this part, an operator must:

(a) Provide notice on the Web site or online service of what information it collects from children, how it uses such information, and its disclosure practices for such information (§ 312.4(b));

(b) Obtain verifiable parental consent prior to any collection, use, and/or disclosure of personal information from children (§ 312.5);

(c) Provide a reasonable means for a parent to review the personal information collected from a child and to refuse to permit its further use or maintenance (§ 312.6);

(d) Not condition a child's participation in a game, the offering of a prize, or another activity on the child disclosing more personal information than is reasonably necessary to participate in such activity (§ 312.7); and

(e) Establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children (§ 312.8).

**§ 312.4  Notice.**

(a) *General principles of notice.* It shall be the obligation of the operator to provide notice and obtain verifiable parental consent prior to collecting, using, or disclosing personal information from children. Such notice must be clearly and understandably written, complete, and must contain no unrelated, confusing, or contradictory materials.

(b) *Direct notice to the parent.* An operator must make reasonable efforts, taking into account available technology, to ensure that a parent of a child receives direct notice of the operator's practices with regard to the collection, use, or disclosure of personal information from children, including notice of any material change in the collection, use, or disclosure practices to which the parent has previously consented.

(c) *Content of the direct notice to the parent*—(1) *Content of the direct notice to the parent under § 312.5(c)(1) (Notice*

*to Obtain Parent's Affirmative Consent to the Collection, Use, or Disclosure of a Child's Personal Information).* This direct notice shall set forth:

(i) That the operator has collected the parent's online contact information from the child, and, if such is the case, the name of the child or the parent, in order to obtain the parent's consent;

(ii) That the parent's consent is required for the collection, use, or disclosure of such information, and that the operator will not collect, use, or disclose any personal information from the child if the parent does not provide such consent;

(iii) The additional items of personal information the operator intends to collect from the child, or the potential opportunities for the disclosure of personal information, should the parent provide consent;

(iv) A hyperlink to the operator's online notice of its information practices required under paragraph (d) of this section;

(v) The means by which the parent can provide verifiable consent to the collection, use, and disclosure of the information; and

(vi) That if the parent does not provide consent within a reasonable time from the date the direct notice was sent, the operator will delete the parent's online contact information from its records.

(2) *Content of the direct notice to the parent under § 312.5(c)(2) (Voluntary Notice to Parent of a Child's Online Activities Not Involving the Collection, Use or Disclosure of Personal Information).* Where an operator chooses to notify a parent of a child's participation in a Web site or online service, and where such site or service does not collect any personal information other than the parent's online contact information, the direct notice shall set forth:

(i) That the operator has collected the parent's online contact information from the child in order to provide notice to, and subsequently update the parent about, a child's participation in a Web site or online service that does not otherwise collect, use, or disclose children's personal information;

(ii) That the parent's online contact information will not be used or disclosed for any other purpose;

(iii) That the parent may refuse to permit the child's participation in the Web site or online service and may require the deletion of the parent's online contact information, and how the parent can do so; and

(iv) A hyperlink to the operator's online notice of its information

practices required under paragraph (d) of this section.

(3) *Content of the direct notice to the parent under § 312.5(c)(4) (Notice to a Parent of Operator's Intent to Communicate with the Child Multiple Times).* This direct notice shall set forth:

(i) That the operator has collected the child's online contact information from the child in order to provide multiple online communications to the child;

(ii) That the operator has collected the parent's online contact information from the child in order to notify the parent that the child has registered to receive multiple online communications from the operator;

(iii) That the online contact information collected from the child will not be used for any other purpose, disclosed, or combined with any other information collected from the child;

(iv) That the parent may refuse to permit further contact with the child and require the deletion of the parent's and child's online contact information, and how the parent can do so;

(v) That if the parent fails to respond to this direct notice, the operator may use the online contact information collected from the child for the purpose stated in the direct notice; and

(vi) A hyperlink to the operator's online notice of its information practices required under paragraph (d) of this section.

(4) *Content of the direct notice to the parent required under § 312.5(c)(5) (Notice to a Parent In Order to Protect a Child's Safety).* This direct notice shall set forth:

(i) That the operator has collected the name and the online contact information of the child and the parent in order to protect the safety of a child;

(ii) That the information will not be used or disclosed for any purpose unrelated to the child's safety;

(iii) That the parent may refuse to permit the use, and require the deletion, of the information collected, and how the parent can do so;

(iv) That if the parent fails to respond to this direct notice, the operator may use the information for the purpose stated in the direct notice; and

(v) A hyperlink to the operator's online notice of its information practices required under paragraph (d) of this section.

(d) *Notice on the Web site or online service.* In addition to the direct notice to the parent, an operator must post a prominent and clearly labeled link to an online notice of its information practices with regard to children on the home or landing page or screen of its Web site or online service, *and,* at each area of the Web site or online service

where personal information is collected from children. The link must be in close proximity to the requests for information in each such area. An operator of a general audience Website or online service that has a separate children's area must post a link to a notice of its information practices with regard to children on the home or landing page or screen of the children's area. To be complete, the online notice of the Web site or online service's information practices must state the following:

(1) The name, address, telephone number, and email address of all operators collecting or maintaining personal information from children through the Web site or online service. *Provided that:* The operators of a Web site or online service may list the name, address, phone number, and email address of one operator who will respond to all inquiries from parents concerning the operators' privacy policies and use of children's information, as long as the names of all the operators collecting or maintaining personal information from children through the Web site or online service are also listed in the notice;

(2) A description of what information the operator collects from children, including whether the Web site or online service enables a child to make personal information publicly available; how the operator uses such information; and, the operator's disclosure practices for such information; and

(3) That the parent can review or have deleted the child's personal information, and refuse to permit further collection or use of the child's information, and state the procedures for doing so.

## § 312.5 Parental consent.

(a) *General requirements.* (1) An operator is required to obtain verifiable parental consent before any collection, use, or disclosure of personal information from children, including consent to any material change in the collection, use, or disclosure practices to which the parent has previously consented.

(2) An operator must give the parent the option to consent to the collection and use of the child's personal information without consenting to disclosure of his or her personal information to third parties.

(b) *Methods for verifiable parental consent.* (1) An operator must make reasonable efforts to obtain verifiable parental consent, taking into consideration available technology. Any method to obtain verifiable parental consent must be reasonably calculated,

in light of available technology, to ensure that the person providing consent is the child's parent. (2) Existing methods to obtain verifiable parental consent that satisfy the requirements of this paragraph include:

(i) Providing a consent form to be signed by the parent and returned to the operator by postal mail, facsimile, or electronic scan;

(ii) Requiring a parent, in connection with a monetary transaction, to use a credit card, debit card, or other online payment system that provides notification of each discrete transaction to the primary account holder;

(iii) Having a parent call a toll-free telephone number staffed by trained personnel;

(iv) Having a parent connect to trained personnel via video-conference;

(v) Verifying a parent's identity by checking a form of government-issued identification against databases of such information, where the parent's identification is deleted by the operator from its records promptly after such verification is complete; or

(vi) *Provided that,* an operator that does not ''disclose'' (as defined by § 312.2) children's personal information, may use an email coupled with additional steps to provide assurances that the person providing the consent is the parent. Such additional steps include: Sending a confirmatory email to the parent following receipt of consent, or obtaining a postal address or telephone number from the parent and confirming the parent's consent by letter or telephone call. An operator that uses this method must provide notice that the parent can revoke any consent given in response to the earlier email.

(3) *Safe harbor approval of parental consent methods.* A safe harbor program approved by the Commission under § 312.11 may approve its member operators' use of a parental consent method not currently enumerated in paragraph (b)(2) of this section where the safe harbor program determines that such parental consent method meets the requirements of paragraph (b)(1) of this section.

(c) *Exceptions to prior parental consent.* Verifiable parental consent is required prior to any collection, use, or disclosure of personal information from a child *except* as set forth in this paragraph:

(1) Where the sole purpose of collecting the name or online contact information of the parent or child is to provide notice and obtain parental consent under § 312.4(c)(1). If the operator has not obtained parental consent after a reasonable time from the date of the information collection, the

Case 5:22-cv-00518-BO-RN  Document 15  Filed 02/07/23  Page 42 of 45

operator must delete such information from its records;

(2) Where the purpose of collecting a parent's online contact information is to provide voluntary notice to, and subsequently update the parent about, the child's participation in a Web site or online service that does not otherwise collect, use, or disclose children's personal information. In such cases, the parent's online contact information may not be used or disclosed for any other purpose. In such cases, the operator must make reasonable efforts, taking into consideration available technology, to ensure that the parent receives notice as described in § 312.4(c)(2);

(3) Where the sole purpose of collecting online contact information from a child is to respond directly on a one-time basis to a specific request from the child, and where such information is not used to re-contact the child or for any other purpose, is not disclosed, and is deleted by the operator from its records promptly after responding to the child's request;

(4) Where the purpose of collecting a child's and a parent's online contact information is to respond directly more than once to the child's specific request, and where such information is not used for any other purpose, disclosed, or combined with any other information collected from the child. In such cases, the operator must make reasonable efforts, taking into consideration available technology, to ensure that the parent receives notice as described in § 312.4(c)(3). An operator will not be deemed to have made reasonable efforts to ensure that a parent receives notice where the notice to the parent was unable to be delivered;

(5) Where the purpose of collecting a child's and a parent's online and name contact information, is to protect the safety of a child, and where such information is not used or disclosed for any purpose unrelated to the child's safety. In such cases, the operator must make reasonable efforts, taking into consideration available technology, to provide a parent with notice as described in § 312.4(c)(4);

(6) Where the purpose of collecting a child's name and online contact information is to:

(i) Protect the security or integrity of its Web site or online service;

(ii) Take precautions against liability;

(iii) Respond to judicial process; or

(iv) To the extent permitted under other provisions of law, to provide information to law enforcement agencies or for an investigation on a matter related to public safety; and where such information is not be used for any other purpose;

(7) Where an operator collects a persistent identifier and no other personal information and such identifier is used for the sole purpose of providing support for the internal operations of the Web site or online service. In such case, there also shall be no obligation to provide notice under § 312.4; or

(8) Where an operator covered under paragraph (2) of the definition of *Web site or online service directed to children* in § 312.2 collects a persistent identifier and no other personal information from a user who affirmatively interacts with the operator and whose previous registration with that operator indicates that such user is not a child. In such case, there also shall be no obligation to provide notice under § 312.4.

### § 312.6 Right of parent to review personal information provided by a child.

(a) Upon request of a parent whose child has provided personal information to a Web site or online service, the operator of that Web site or online service is required to provide to that parent the following:

(1) A description of the specific types or categories of personal information collected from children by the operator, such as name, address, telephone number, email address, hobbies, and extracurricular activities;

(2) The opportunity at any time to refuse to permit the operator's further use or future online collection of personal information from that child, and to direct the operator to delete the child's personal information; and

(3) Notwithstanding any other provision of law, a means of reviewing any personal information collected from the child. The means employed by the operator to carry out this provision must:

(i) Ensure that the requestor is a parent of that child, taking into account available technology; and

(ii) Not be unduly burdensome to the parent.

(b) Neither an operator nor the operator's agent shall be held liable under any Federal or State law for any disclosure made in good faith and following reasonable procedures in responding to a request for disclosure of personal information under this section.

(c) Subject to the limitations set forth in § 312.7, an operator may terminate any service provided to a child whose parent has refused, under paragraph (a)(2) of this section, to permit the operator's further use or collection of personal information from his or her child or has directed the operator to delete the child's personal information.

### § 312.7 Prohibition against conditioning a child's participation on collection of personal information.

An operator is prohibited from conditioning a child's participation in a game, the offering of a prize, or another activity on the child's disclosing more personal information than is reasonably necessary to participate in such activity.

### § 312.8 Confidentiality, security, and integrity of personal information collected from children.

The operator must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children. The operator must also take reasonable steps to release children's personal information only to service providers and third parties who are capable of maintaining the confidentiality, security and integrity of such information, and who provide assurances that they will maintain the information in such a manner.

### § 312.9 Enforcement.

Subject to sections 6503 and 6505 of the Children's Online Privacy Protection Act of 1998, a violation of a regulation prescribed under section 6502 (a) of this Act shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under section 18(a)(1)(B) of the Federal Trade Commission Act (15 U.S.C. 57a(a)(1)(B)).

### § 312.10 Data retention and deletion requirements.

An operator of a Web site or online service shall retain personal information collected online from a child for only as long as is reasonably necessary to fulfill the purpose for which the information was collected. The operator must delete such information using reasonable measures to protect against unauthorized access to, or use of, the information in connection with its deletion.

### § 312.11 Safe harbor programs.

(a) *In general.* Industry groups or other persons may apply to the Commission for approval of self-regulatory program guidelines ("safe harbor programs"). The application shall be filed with the Commission's Office of the Secretary. The Commission will publish in the **Federal Register** a document seeking public comment on the application. The Commission shall issue a written determination within 180 days of the filing of the application.

(b) *Criteria for approval of self-regulatory program guidelines.* Proposed safe harbor programs must demonstrate

that they meet the following performance standards:

(1) Program requirements that ensure operators subject to the self-regulatory program guidelines ("subject operators") provide substantially the same or greater protections for children as those contained in §§ 312.2 through 312.8, and 312.10.

(2) An effective, mandatory mechanism for the independent assessment of subject operators' compliance with the self-regulatory program guidelines. At a minimum, this mechanism must include a comprehensive review by the safe harbor program, to be conducted not less than annually, of each subject operator's information policies, practices, and representations. The assessment mechanism required under this paragraph can be provided by an independent enforcement program, such as a seal program.

(3) Disciplinary actions for subject operators' non-compliance with self-regulatory program guidelines. This performance standard may be satisfied by:

(i) Mandatory, public reporting of any action taken against subject operators by the industry group issuing the self-regulatory guidelines;

(ii) Consumer redress;

(iii) Voluntary payments to the United States Treasury in connection with an industry-directed program for violators of the self-regulatory guidelines;

(iv) Referral to the Commission of operators who engage in a pattern or practice of violating the self-regulatory guidelines; or

(v) Any other equally effective action.

(c) *Request for Commission approval of self-regulatory program guidelines.* A proposed safe harbor program's request for approval shall be accompanied by the following:

(1) A detailed explanation of the applicant's business model, and the technological capabilities and mechanisms that will be used for initial and continuing assessment of subject operators' fitness for membership in the safe harbor program;

(2) A copy of the full text of the guidelines for which approval is sought and any accompanying commentary;

(3) A comparison of each provision of §§ 312.2 through 312.8, and 312.10 with the corresponding provisions of the guidelines; and

(4) A statement explaining:

(i) How the self-regulatory program guidelines, including the applicable assessment mechanisms, meet the requirements of this part; and

(ii) How the assessment mechanisms and compliance consequences required

under paragraphs (b)(2) and (b)(3) provide effective enforcement of the requirements of this part.

(d) *Reporting and recordkeeping requirements.* Approved safe harbor programs shall:

(1) By July 1, 2014, and annually thereafter, submit a report to the Commission containing, at a minimum, an aggregated summary of the results of the independent assessments conducted under paragraph (b)(2) of this section, a description of any disciplinary action taken against any subject operator under paragraph (b)(3) of this section, and a description of any approvals of member operators' use of a parental consent mechanism, pursuant to § 312.5(b)(4);

(2) Promptly respond to Commission requests for additional information; and

(3) Maintain for a period not less than three years, and upon request make available to the Commission for inspection and copying:

(i) Consumer complaints alleging violations of the guidelines by subject operators;

(ii) Records of disciplinary actions taken against subject operators; and

(iii) Results of the independent assessments of subject operators' compliance required under paragraph (b)(2) of this section.

(e) *Post-approval modifications to self-regulatory program guidelines.* Approved safe harbor programs must submit proposed changes to their guidelines for review and approval by the Commission in the manner required for initial approval of guidelines under paragraph (c)(2) of this section. The statement required under paragraph (c)(4) of this section must describe how the proposed changes affect existing provisions of the guidelines.

(f) *Revocation of approval of self-regulatory program guidelines.* The Commission reserves the right to revoke any approval granted under this section if at any time it determines that the approved self-regulatory program guidelines or their implementation do not meet the requirements of this part. Safe harbor programs that were approved prior to the publication of the Final Rule amendments must, by March 1, 2013, submit proposed modifications to their guidelines that would bring them into compliance with such amendments, or their approval shall be revoked.

(g) *Operators' participation in a safe harbor program.* An operator will be deemed to be in compliance with the requirements of §§ 312.2 through 312.8, and 312.10 if that operator complies with Commission-approved safe harbor program guidelines. In considering whether to initiate an investigation or

bring an enforcement action against a subject operator for violations of this part, the Commission will take into account the history of the subject operator's participation in the safe harbor program, whether the subject operator has taken action to remedy such non-compliance, and whether the operator's non-compliance resulted in any one of the disciplinary actions set forth in paragraph (b)(3).

### § 312.12   Voluntary Commission Approval Processes.

(a) *Parental consent methods.* An interested party may file a written request for Commission approval of parental consent methods not currently enumerated in § 312.5(b). To be considered for approval, a party must provide a detailed description of the proposed parental consent methods, together with an analysis of how the methods meet § 312.5(b)(1). The request shall be filed with the Commission's Office of the Secretary. The Commission will publish in the **Federal Register** a document seeking public comment on the request. The Commission shall issue a written determination within 120 days of the filing of the request; and

(b) *Support for internal operations of the Web site or online service.* An interested party may file a written request for Commission approval of additional activities to be included within the definition of support for internal operations. To be considered for approval, a party must provide a detailed justification why such activities should be deemed support for internal operations, and an analysis of their potential effects on children's online privacy. The request shall be filed with the Commission's Office of the Secretary. The Commission will publish in the **Federal Register** a document seeking public comment on the request. The Commission shall issue a written determination within 120 days of the filing of the request.

### § 312.13   Severability.

The provisions of this part are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

By direction of the Commission, Commissioner Rosch abstaining, and Commissioner Ohlhausen dissenting.

**Donald S. Clark,**

*Secretary.*

## Dissenting Statement of Commissioner Maureen K. Ohlhausen

I voted against adopting the amendments to the Children's Online Privacy Protection Act (COPPA) Rule because I believe a core provision of the amendments exceeds the scope of the authority granted us by Congress in COPPA, the statute that underlies and authorizes the Rule.[401] Before I explain my concerns, I wish to commend the Commission staff for their careful consideration of the multitude of issues raised by the numerous comments in this proceeding. Much of the language of the amendments is designed to preserve flexibility for the industry while striving to protect children's privacy, a goal I support strongly. The final proposed amendments largely strike the right balance between protecting children's privacy online and avoiding undue burdens on providers of children's online content and services. The staff's great expertise in the area of children's privacy and deep understanding of the values at stake in this matter have been invaluable in my consideration of these important issues.

In COPPA Congress defined who is an operator and thereby set the outer boundary for the statute's and the COPPA Rule's reach.[402] It is undisputed that COPPA places obligations on operators of Web sites or online services directed to children or operators with actual knowledge that they are collecting personal information from

children. The statute provides, "It is unlawful for an operator of a Web site or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed [by the FTC]."[403]

The Statement of Basis and Purpose for the amendments (SBP) discusses concerns that the current COPPA Rule may not cover child-directed Web sites or services that do not themselves collect children's personal information but may incorporate third-party plug-ins that collect such information[404] for the plug-ins' use but do not collect or maintain the information for, or share it with, the child-directed site or service. To address these concerns, the amendments add a new proviso to the definition of operator in the COPPA Rule: "Personal information is collected or maintained on behalf of an operator when: (a) it is collected or maintained by an agent or service provider of the operator; or (b) the operator benefits by allowing another person to collect personal information directly from users of such Web site or online service."[405]

The proposed amendments construe the term "on whose behalf such information is collected and maintained" to reach child-directed Web sites or services that merely derive from a third-party plug-in some kind of benefit, which may well be unrelated to the collection and use of children's

information (e.g., content, functionality, or advertising revenue). I find that this proviso—which would extend COPPA obligations to entities that do not collect personal information from children or have access to or control of such information collected by a third-party does not comport with the plain meaning of the statutory definition of an operator in COPPA, which covers only entities "on whose behalf such information is collected and maintained."[406] In other words, I do not believe that the fact that a child-directed site or online service receives any kind of benefit from using a plug-in is equivalent to the collection of personal information by the third-party plug-in on behalf of the child-directed site or online service.

As the Supreme Court has directed, an agency "must give effect to the unambiguously expressed intent of Congress."[407] Thus, regardless of the policy justifications offered, I cannot support expanding the definition of the term "operator" beyond the statutory parameters set by Congress in COPPA.

I therefore respectfully dissent.

[FR Doc. 2012–31341 Filed 1–16–13; 8:45 am]

**BILLING CODE 6750–01–P**

---

[401] 15 U.S.C. 6501–6506.

[402] COPPA, 15 U.S.C. 6501(2), defines the term "operator" as "any person who operates a Web site located on the Internet or an online service and who collects or maintains personal information from or about users of or visitors to such Web site or online service, or on whose behalf such information is collected and maintained * * *" As stated in the Statement of Basis and Purpose for the original COPPA Rule, "The definition of 'operator' is of central importance because it determines who is covered by the Act and the Rule." Children's Online Privacy Protection Rule 64 FR 59888, 59891 (Nov. 3, 1999) (final rule).

[403] 15 U.S.C. 6502(a)(1).

[404] If the third-party plugs-ins are child-directed or have actual knowledge that they are collecting children's personal information they are already expressly covered by the COPPA statute. Thus, as the SBP notes, a behavioral advertising network that targets children under the age of 13 is already deemed an operator. The amendment must therefore be aimed at reaching third-party plug-ins that are either not child-directed or do not have actual knowledge that they are collecting children's personal information, which raises a question about what harm this amendment will address. For example, it appears that this same type of harm could occur through general audience Web sites and online services collecting and using visitors' personal information without knowing whether some of the data is children's personal information, which is a practice that COPPA and the amendments do not prohibit.

[405] 16 CFR 312.2 (Definitions).

[406] This expanded definition of operator reverses the Commission's previous conclusion that the appropriate test for determining an entity's status as an operator is to "look at the entity's relationship to the data collected," using factors such as "who owns and/or controls the information, who pays for its collection and maintenance, the pre-existing contractual relationships regarding collection and maintenance of the information, and the role of the Web site or online service in collecting and/or maintaining the information (i.e., whether the site participates in collection or is merely a conduit through which the information flows to another entity.)" Children's Online Privacy Protection Rule 64 FR 59888, 59893, 59891 (Nov. 3, 1999) (final rule).

[407] Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–43 (1984) ("When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Case 5:22-cv-00518-BO-RN   Document 15   Filed 02/07/23   Page 45 of 45